United States v. Daniel E. Carpenter Good morning Mr. Weinberg Good morning your honor, I'm Martin Weinberg on behalf of Appellant Daniel Carpenter along with Kimberly Homan I would ask to reserve two minutes for rebuttal You may Thank you sir Appellant Carpenter was indicted in February 2004 and sentenced in late February 2014 A period of over ten years between indictment and sentencing It was a period of five years, eight months between the verdict that convicted him in the second trial and his sentencing Both this court and Nelson Rodriguez, the Supreme Court, and Pollard assumed that sentencing like trial was subjected to the Sixth Amendment four factor Barker v. Wingo test To determine whether or not the remedy of dismissal was appropriate We contend that given a ten year period, an extraordinary period between the indictment and the ultimate sentencing, that the Barker v. Wingo test compels dismissal In April of 2014, your honor, Judge Howard wrote an opinion United States v. Sousa, talked about one year and even 18 months being the assumed trigger for a presumption of prejudice and an application of the analysis required by Barker v. Wingo Barker talked about five years being an extraordinary period of time We have over five years just between the conviction of the second trial and the sentencing These courts talk about the presumption of prejudice Judge Lopez wrote in his Third Circuit, while sitting in the Third Circuit in Velazquez, about the difficulty it would be to rebut a six and a half year period between an indictment and a trial in that case Don't we need to distinguish if we have a trial and a conviction and then we have three, four, five years and sentencing and the conviction's affirmed That's one scenario. How could you possibly justify the three to five years would be the question But if we have instead a trial and a conviction and then you have an appeal and you have a reversal of the conviction and you have a new trial, why would you be measuring the time from the end of the first trial to the sentencing? It seems incongruous Because the prejudice to the defendant, whether it's under a presumption standard or under an actual standard, is extreme and it starts with an indictment, it starts with the uncertainty and anxiety of whether or not I will be convicted or found innocent But won't that happen every time that a defendant successfully asserts an argument for a new trial on appeal? You're always going to have at least a year and probably more And if we were not talking about a ten year period, the first time Mr. Carpenter brought a Sixth Amendment constitutional motion to dismiss was while the second appeal was pending before this court in March of 2012 Eight years after his indictment he asked that the case be remanded to Judge O'Toole to decide the Sixth Amendment issue The government opposed that motion to remand Judge O'Toole ultimately said he had no jurisdiction to address the speedy trial implications of what was then an eight year delay Mr. Carpenter throughout the period where this case was pending before Judge O'Toole made motion after motion asking for expedited decision making during the three year period that this court deemed to be regrettable in a footnote in its last opinion But during that same time, as I understand it, he was making numerous filings saying to Judge O'Toole, there's additional evidence and argument that I want you to consider on the pending motion He was, Your Honor So wasn't Judge O'Toole, if you're asking him to consider that additional information, then doesn't he need to consider it? He does need to consider it You do that throughout the whole three year period of time, aren't you kind of always continuously pushing back the decision day? Well the list of motions that Judge O'Toole enumerated in docket 431, a third of them came before the hearing on the new trial motion during the first six months between verdict and hearing after the filing post-verdict of the Rule 33 Almost all of the other motions were at least a year before Judge O'Toole ultimately decided the case in September 2011, which was over three years after verdict They were principled motions made as a result of an evolving universe of newly discovered evidence that the series of Merrill Lynch witnesses in this case had committed perjury for the monetary benefits of Merrill Lynch They had parallel false testimony that ultimately could be contradicted by documents that were withheld from civil discovery and therefore withheld from the government who could not provide them to Mr. Carpenter But they were documents that would have dramatically affected the defense, which was good faith and transparency where the Merrill Lynch witnesses all claimed not to know that Mr. Carpenter's funds were from third parties Carpenter had no choice, he had due diligence requirements under Rule 33 to file these pleadings, but at the end Judge O'Toole did not even address the Merrill Lynch issues, the newly discovered issues, the right issues in his September 1, 2011 opinion And again the only pleadings in the year preceding that opinion were requests for status conferences and a supplemental authority Almost all of these pleadings listed by Judge O'Toole were long before he decided this case, not correlated to the analysis he ultimately gave the case, and not a justification for a three year delay between verdict and an opinion Is there any time that you are willing to concede that is excludable from this period? Yes, Mr. Carpenter twice, once in 2005 your honor, asked for a multi-month continuance for preparation of the first trial, but that was within a year or so of the indictment and nine years before sentencing How much time are you willing to concede there? Three or four months your honor, there was a request for a trial date, the government joined with the first request to March and then there was a request that lasted until July You said there were two times? Yes, the second time was once this court upheld Judge O'Toole's initial granting of Rule 33, the case was remanded, set for retrial, conference in November 26, 2007, transcript is in a supplemental appendix before the court The parties discussed a trial date, this was late November, counsel said I had conflicts, he asked for July, the government asked for earlier, the judge said May, I think your honor can take a number of months there, it's uncertain because we don't know what Judge O'Toole would have said absent the request for a trial date in July But even if we have a 5, 6, 7 month period, we're still dealing down from 10 years, which is twice what Barker said was an extraordinary delay and it certainly implicates a presumption of prejudice which is augmented in this case by hard proof that Carpenter was prejudiced And none of the motions that you filed on behalf of your client created an excludable period? Under the Speedy Trial Act there was many excludable periods and if I could switch to the Speedy Trial issue Well you have two, you have the Speedy Trial, you have the Constitution, the Sixth Amendment issue Carpenter is an active litigant, your honor, he filed cross appeals, in other words, once the government, once he filed a new trial motion and once the new trial motions were granted by Judge O'Toole and once the government appealed, Carpenter would file a cross appeal saying the denial of the judgment of acquittal motions was improper and that since the government was appealing the same case on new trial, the court of appeals could and should consider the inadequacy of the proof at the trial that was being appealed, but neither of them were shown to have extended the timeline, in other words, one of those Rule 29s was denied in the same opinion that the Rule 33 was upheld and the second one was the subject of a short two page summary denial based on the first one So Carpenter is the only party in this case, your honor, that pushed for expedited decision making. There were four different examples where while this case was pending before Judge O'Toole and it's in appendix 2358, 2963, 3035, 3049, they're quoted in the appellant's brief He asked the judge for expedited decision. He said this has been pending 15 months, 16 months, 24 months, please decide. I don't think we're going to be able to figure out how much time is excluded in oral arguments, so I would like to go to the next issue that I have in mind. What prejudice have you actually suffered other than the fact that you, anxiety as I take it? Well, that is the principal prejudice. In 2008, six years before sentencing and four years before the filing of the first Sixth Amendment motion, Carpenter is interviewed by probation. He says I'm under a state of siege, I can't sleep, I have panic attacks, and then during the hearings before Judge O'Toole on the, once this court reversed the granting of the second new trial, he had a psychiatrist give an opinion about his obsessions, about how his life has been totally tormented by the uncertainty, and it's an understandable uncertainty. But is there anything, after the conviction in the second trial, between then and the sentencing, I think you said that was over five and a half years. It was, Your Honor. Is there any prejudice in the sense of his ability to be prepared for sentencing, to put on his part of the sentencing case or rebut the government's case, sort of that legal prejudice? Yeah, I cannot make a tangible argument that in this case he was unable to essentially present his facts. Judge O'Toole did not reduce his sentence based on delay, we argued it. Judge O'Toole did not reduce the sentence based on the fact that it was market forces and the NASDAQ collapse that at least contributed to the loss. But when we're trying to determine what is the correct standard, when we're dealing not with the classic trial delay, but with the less ordinary sentencing delay, certainly it affects your ability to fight loss. It affects whether you have witnesses. Sentences are very complicated, and it's one of the reasons why the Sixth Amendment, rather than due process analysis, fits sentencing just like it fits trial. But would it not fit under both? Would you not be able to make that argument under both Fifth or Sixth? I'm not yet convinced that we've actually held that we should be talking about the Sixth Amendment rather than the Fifth Amendment, but can't you make the same prejudice argument under both? Absolutely, and you would actually, for due process, extend this back to 2001 when Carpenter was first targeted. Since due process does not get triggered by the indictment or the arrest, it gets triggered by the pre-indictment delay if it's extreme enough. This would be 13 years, and even if there was not tangible prejudice that he was not disabled from presenting his sentencing arguments, 13 years in the life of a 60-year-old man, this has all of the agony. The Supreme Court over and over again in the Strunk case, the Loud Heart case, the Marion case, talks about the purpose of speedy trial is to reduce uncertainty. Here, Carpenter didn't know after two reversals of convictions whether he would ultimately be found guilty or innocent. He certainly didn't know for 13 years, if in 10 of them he was a defendant, whether his freedom would be extinguished, and that's what makes this an extraordinary case. 13 years under federal targeting, 10 years under federal indictment is simply too much. It's an ordeal that no citizen who doesn't cause it should have to endure, and it really cries out for a remedy, whether it's Sixth Amendment or whether it's due process. Thank you very much. Mr. Smith, good morning. Good morning, Your Honors, and may it please the Court, Christopher Smith for the United States. Your Honors, I begin by paraphrasing the Supreme Court in Loud Hawk. The defendant may not criticize the judicial process which he so frequently relied upon to garner dismissal of his case on speedy trial grounds. Here, during the relevant time period, the defendant filed two cross appeals, two petitions for certiorari, petitions for mandamus, and an unrelenting stream of motions, supplemental motions, substantive notices, and reports on a district court docket that now runs almost 500 entries. This active litigation strategy, as the defendant now admits, was indeed his right, but the delays it produced cannot form the basis of a speedy trial claim. The district court correctly denied the defendant's motion to dismiss based on the Sixth Amendment and equally correctly denied the motion to dismiss based on the Speedy Trial Act. Because the defendant has focused his argument on the Sixth Amendment issues, I intend to do the same, but I'm certainly happy to address any of the other issues as the Court pleases. But doesn't this all begin, I mean, we have these cases that I just don't understand where the prosecutor makes these assertions in closing argument that they shouldn't be making. And isn't that what started the whole thing here, is the prosecution violates the law, makes an improper closing argument, which then necessitates a setting aside of the verdict, and then the prosecution appeals that. And of course he then has to cross appeal when you do that. So how do you say we should hold him responsible for filing a cross appeal? Sure. If the prosecution hadn't violated the law, the case would have been over one way or the other. Well, Your Honor, I would slightly disagree with the characterization of the first appeal in Carpenter 1, that it presented a close question. As Chief Judge Lynch said in her concurring opinion, the issue was that there was a gray area at trial about the degree to which it was proper to discuss Mr. Carpenter's losses. Again, Judge Campbell dissented in that. So it was a close question in that case. And although Mr. Carpenter in his briefs terms the issue to be prosecutorial misconduct, it certainly was not framed as such by the panel. You had one judge who wanted to send it back, and a closer question. But what was it reversed for if not prosecutorial misconduct? Your Honor, it was characterized as improper comments during the closing argument. The prosecution wanders into this gray zone and got too far into it. And that's why we have all this time. Your Honor, the district court was well within its discretion when it found that the appeal still was legitimate and justifiable. And I turn back to the Supreme Court's holding in Loud Hawk, which the Supreme Court explained a three-factor test, basically how we look at a government appeal. Number one is the strength of the government's case, which as the district court correctly held, it was a close question here. Number two is the importance of the issue to the case. This was central to the case vacating the jury's verdict on Carpenter 1. And three, in some cases, the seriousness of the crime. And this was a multimillion-dollar fraud. Thus, under the Supreme Court's holding in Loud Hawk, employing the three-factor analysis, the government's appeal, even if we were just simply examining the government's appeal, regardless of Mr. Carpenter's cross-appeal, the government's appeal was legitimate and should, according to the Supreme Court in Loud Hawk and this court in Trouber, have, quote, no effective weight in the reasons for the delay. And indeed, the reasons for the delay are what I would focus in on here, because the Supreme Court in Loud Hawk and this court in Trouber has made clear that that, I believe, the quote that was used is the flag that all litigants seek to capture. And we've covered the first delay in Carpenter 1, which I would add that I do think it's significant that Mr. Carpenter did file the cross-appeal, which this court held was without jurisdiction. And if your honors look at the court's opinion in Carpenter 1, roughly half of the analysis section is spent dealing with Mr. Carpenter's cross-appeal. So if we're talking simply about the time it takes to process issues, that, regardless, undeniably, led to the increase in the time it took to process that appeal. Incidentally, that is the only delay period that Mr. Carpenter advances that actually occurred prior to his final conviction in 2008. And as is explained in our briefs, the government's position is the Speedy Trial Clause, the Sixth Amendment Speedy Trial Clause only applies until final conviction. And Mr. Carpenter, in his opening brief, did not raise a Fifth Amendment argument, and thus we would consider the Fifth Amendment argument to be waived. But even if this court were to do what it's done in the past and assume that arguendo that the Speedy Trial Clause applies through the end, the other two periods of delay should not have any effective weight against the government either. The period of time that the district court spent deciding the Speedy Trial motions, we don't need to speculate what was going on there because the district court, in its order on the Speedy Trial Clause, explained to us precisely what had happened, and that's that it termed the delay to be regrettable, but that it was substantially caused by Mr. Carpenter's voluminous filings. And the district judge listed exactly what was before him at that time, and the list is 21 motions. And Mr. Carpenter, indeed, in some of those filings, made statements that he wished the court to rule on his motions, but he, in those same filings, was giving the court more to decide. So, in effect, Mr. Carpenter kept piling on during that time period. Therefore, that should not count any weight against the government, and even if there were district court negligence, which I don't believe there was, because this court in Trouber has explained that unless it was wholly unjustifiable, then that should not be given any effective weight. And then, finally, I think that the government's appeal in the Carpenter 2 case is almost self-evident, that it was both legitimate and meritorious because the government prevailed and the district court's new trial order was vacated. And, Your Honors, none of the reasons for delay bear any effective weight against the government. Likewise, the assertion of the right, which Mr. Carpenter doesn't even claim to have asserted his constitutional right to a speedy trial until after his conviction, and the prejudice suffered. The Supreme Court's been clear that there are three different kinds of prejudice that are relevant. There's been oppressive pretrial incarceration, the anxiety and concern of the accused, and the possibility that the accused's defense will be impaired by the delay. Now, two of these three have been no issue in this case, and Mr. Carpenter has not raised them as even being relevant. As Mr. Carpenter conceded in his argument, his defense was not hampered by this, and there was no pretrial incarceration. And those are the two factors under prejudice that the Supreme Court and this court have held are the most important. And I'm not aware of any case where, when the other factors do not tip against the government, that anxiety and concern can carry the day in the Barker analysis, that the courts have been quite clear that while that is a relevant consideration, it's certainly not one that bears much weight. Do you know of any cases like this with ten years delay? Well, Your Honor, in Loud Hawk itself, the delay was seven years in that case. That's probably about ten years, though. Well, Your Honor, it's certainly three additional years, but I would say that that's in the same range. And I would look to the facts of Loud Hawk there, that there were two interlocutory appeals in Loud Hawk, and one of them, the time period it was before the court from filing the appeal to the mandate issuing was almost three years. And in the other interlocutory appeal in Loud Hawk, the time period it was before the court was around two years. I think it was 29 months. So we're not dealing with vastly different amounts of time here. And, again, when we look at all the Barker factors, even though, as Your Honor points out, the first factor is certainly enough to trigger inquiry into the other factors, we readily concede that. But because of the reasons for the delay, the lack of the assertion to the right, and only anxiety and concern asserted as prejudice, the district court clearly did not abuse its discretion in finding no speedy trial violation. What do you say to the – as I understand it, an argument is being made that if we look at what the district court did after the three years or so, and its ruling didn't rely at all on any of the 21 motions that had been filed, it was a ruling that could have been made on day one of the three years because it relied solely on what had happened at trial. Well, Your Honor, I would make a couple different points. The first is it did not rely on the subsequent filings because it chose to grant a new trial on a different basis. However, that does not mean that it did not consider the subsequent filings and did not – But it only considered them because, as I understand the argument, because it had not yet got around to deciding what it could have decided on day one. The decision that the judge issued three years later, he essentially could have issued that exact same decision on day one. Yes and no, Your Honor, in the sense that the judge did not ultimately decide based on the reasons that Mr. Carpenter had briefed up. He engaged in a searching review of the record himself and found additional aspects that he deemed to be improper. So the district judge certainly had to engage in a searching review of the record. But, again, I would step back to the fact that we're not speculating about what the district court considered or did or didn't do. The district court has told us in his order that the 21 motions that were before it substantially increased the time he needed to decide this issue. And I think we take the district court for its word that that's what he was engaged in. But I'd even back up, Your Honor, and say even though there was not court negligence here, the Supreme Court has been clear and loud hawk that unless a delay is wholly unjustifiable, and this court in Trouber explained that even if there were negligence that it doesn't, it's a neutral reason that doesn't bear effective weight against the government. And, Your Honors, I know that there have been multiple other issues raised here as well. I feel like they're well covered in our briefs. However, I am more than happy to address any issues that are of concern to the court. Thank you, Your Honors. And the government would ask that you affirm the conviction and sentence of Mr. Carpenter. Thank you. Mr. Weinberg. First, in terms of the first opinion of the First Circuit upholding the first new trial order, Judge Lopez said it was a calculated decision by the government to engage in these gambling metaphors. Judge Lynch says it did not come close to being an abusive discretion, which I contend matters since the government had the option of proceeding to retrial rather than taking the interlocutory appeal. Judge Campbell's dissent was based procedurally on the lack of objections and whether the plain error standard would uphold Judge O'Toole's order. Second, Loudhawk is distinguishable. In Loudhawk, the case was dismissed. The defendant was free. He was not under a criminal justice bail. He was not under a restraint. He was a free man presumed innocent and not even charged. It was a 5-4 decision. Four of the justices, Justices Marshall, Brennan, Blackmun, and Stevens, all said that the length of delay must be assessed looking at both the government and the courts, the district courts, and they're responsible, not a defendant, to bring himself to trial. And that was in their dissenting opinion, which believed that the period of interlocutory appeal should count even if a defendant was fully discharged, as was Defendant Loudhawk. Third, there is a case where simple sentencing delays led to both Sixth Amendment and due process remedies, that being the Third Circuit decision in Burkett v. Cunningham, a habeas case at 826 Fed Second 1208. This is not the first case where there was five- or six-year delays between verdict and sentencing. Is that case in your brief? Yes, it is, Your Honor. Thank you. It's one of the cases that squarely holds the applicability of the Sixth Amendment, which is the analysis that the appellant here contends is the correct one. And finally, the last substantive filing by Carpenter before Judge O'Toole was Docket 360, and that was on July 13, 2010, or a year and over eight months before Judge O'Toole's rulings. The remaining three filings were requests for status conferences and notice of supplemental authority, a letter. Carpenter's pleadings did not correlate to the decision or the delay. He's not responsible. The government's responsible to bring people to speedy sentencing. They have a statutory responsibility under 3731 and a Sixth Amendment responsibility. They failed in this case. They're responsible, and a remedy is required. Thank you very much. Thank you.